UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAJU A.T. DAHLSTROM,<br><br>            Plaintiff,<br><br>    v.<br><br>LIFE CARE CENTERS OF AMERICA, INC. ET AL.,<br><br>            Defendants. | CASE NO. 2:21-cv-01465-JHC<br><br>ORDER RE: DKT. ## 11, 16, 87 |

# I

## INTRODUCTION

Before the Court are three motions. *See* Dkt. ## 11, 16, 87.

First, under Federal Rule of Civil Procedure 12(b)(6), Defendant Mt. Vernon Operations, LLC (MVO) moves to dismiss the claims against it. Dkt. # 11. Defendants Life Care Centers of America, Inc. (LCCA), Kelley Falcon, Nancy Butner, Tara Travers, and Jennifer Scott (collectively, the LCCA Defendants) join in MVO's motion. *See* Dkt. ## 50, 85 (notices of joinder).

Second, also under Rule 12(b)(6), Defendants Sunrise Care Services, Inc. (SCS) and current and former SCS employees, Janelle Saville, Margaret Pattok, and Sharon Anderson (collectively, the Sunrise Defendants) move to dismiss the claims against them. Dkt. # 87.

ORDER RE: DKT. ## 11, 16, 87 - 1

And third, under Rule 12(e), Defendants Department of Social and Health Services, Donald Clintsman, Cheryl Strange, Aging and Long-Term Support Administration, William Moss, Adult Protective Services, James Riccardi, Division of Residential Care Services, Cynthia Southerly, Developmental Disability Administration, and Tia Yvette Mathew (collectively, the State Defendants) move for a more definite statement. Dkt. # 16.

The Court has reviewed the parties' submissions in connection with the motions, the balance of the record, and the applicable law. Being fully advised, the Court: (1) GRANTS MVO's motion to dismiss, Dkt. # 11; (2) GRANTS the Sunrise Defendants' motion to dismiss, Dkt. # 87; and (3) GRANTS the State Defendants' motion for a more definite statement, Dkt. # 16. The Court also GRANTS Plaintiff leave to amend.

## II

### BACKGROUND

Plaintiff alleges as follows: On October 25, 2016, he began working at the Life Care Center of Mount Vernon (LCCMV) as its Director of Social Services.[1] Dkt. # 1-2 at 22–23, 46. Plaintiff asserts that, once LCCMV hired Defendant Travers, he "was subjected to unrelenting harassment from her in the form of being compelled to comply with demands that were made illegal by LCCA [and] federal and state laws governing the care of resident[s]/patient[s] at LCCA's facility." *Id.* at 46. Between May and August 2018, Plaintiff "was actively engaged in

---

[1] It is not entirely clear which entity employed Plaintiff. Plaintiff alleges that he "was hired by Defendant LCCA (Life Care Center of Mount Vernon)." Dkt. # 1-2 at 46. Elsewhere, the complaint suggests that LCCA and the Life Care Center of Mount Vernon are perhaps not one and the same:
> Defendant Life Care Centers of America, Inc., (hereinafter, "LCCA" or "Defendant LCCA, et al.,"), is a for-profit corporation, health care entity, headquartered in Cleveland, Tennessee, United States of America. . . . Defendant Mt. Vernon Operations, LLC., ("MVO"), is a foreign limited liability company; d/b/a: Life Care Center of Mount Vernon (hereinafter, "LCC Mount Vernon" or "LCCA" or "Defendant LCCA, et al.," or "MVO"), serves as the management company of LCC Mount Vernon, providing skilled nursing services.

Dkt. # 1-2 at 23–24.

ORDER RE: DKT. ## 11, 16, 87 - 2

protected activities."[2]  *Id.*  Plaintiff contends that his supervisors, Defendants Travers, Butner, and Scott, "ordered" him "to violate certain LCCA[] policies,"[3] but that Plaintiff refused because he believed such conduct would violate federal law.  *Id.* at 46–47.  On August 1, 2018, Plaintiff told his supervisors "that he would need to take some time off to address some legal matters, including utilizing time-off for FMLA-related care."  *Id.* at 46.

At some point later, Plaintiff's supervisors imposed a Corrective Action Plan (CAP).  *Id.* at 48.  According to Plaintiff, because of the CAP, he was subjected to "further disciplinary actions" and "increase[d] workplace surveillance[]."  *Id.*  Thus, "due to the hostile work environment and retaliation," Plaintiff "felt compelled to resign and was constructively discharged on . . . August 31, 2018."  *Id.* at 48, 51.  Plaintiff "filed both oral and written complaints of employer and employee []misconduct" throughout his employment at LCCMV, and he believes he was "constructively discharged[] because he participated in whistleblowing against Defendants' . . . misconduct."  *Id.* at 5.

Almost three years later, on August 17, 2021, Plaintiff filed his complaint in Washington state court,[4] *id.* at 1, and MVO removed the case to the Western District of Washington, Dkt. # 1.  The complaint purports to assert 14 causes of action: (1) a constructive wrongful discharge in

---

[2] Plaintiff provides no further explanation.  *See* Dkt. # 1-2 at 46.
[3] Plaintiff provides no further explanation about Defendants Travers, Butner, and Scott's alleged order.  *See* Dkt. # 1-2 at 47.
[4] Plaintiff then filed a first amended complaint (FAC).  *See* Dkt. # 110.  In the Ninth Circuit, the filing of "an amended complaint supercedes the original complaint and renders it without legal effect."  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012).  On October 13, 2022, given the FAC, the Court struck as moot the three motions (Dkt. ## 11, 16, 87) at issue in this order.  Dkt. # 139 at 2 (citing *Caldwell v. Boeing Co.*, No. C17-1741-JLR, 2018 WL 2113980, at *3 (W.D. Wash. May 8, 2018) ("the court denied Boeing's first motion to dismiss as moot because Mr. Caldwell's second amended complaint superseded his original complaint and rendered his original complaint without legal effect.")).  On October 21, 2022, the Court held a telephonic conference with the parties over a letter Plaintiff submitted about the Court's October 13, 2022, order.  Dkt. # 142; *see* Dkt. # 140 (Plaintiff's letter).  During the conference, Plaintiff withdrew his FAC.  Dkt. # 142.  Dkt. # 142.  The Court therefore vacated its October 13, 2022, order (Dkt. # 139), and renoted the three stricken motions (Dkt. ## 11, 16, 87) for consideration.  *Id.*  The original complaint is again the operative pleading.

ORDER RE: DKT. ## 11, 16, 87 - 3

violation of public policy claim, Dkt. # 1-2 at 50–52 (Claim 1); (2) another constructive wrongful discharge in violation of public policy claim, *id.* at 52–53 (Claim 2); (3) violation of the Washington Law Against Discrimination (WLAD), Rev. Code. Wash. (RCW) 49.60 *et seq.*, for retaliation, *id.* at 52–53 (Claim 3); (4) an interference claim under Washington's Family Leave Act (WFLA), RCW 49.78 *et seq.*, *id.* at 53–54 (Claim 4); (5) WLAD violations for hostile work environment, disparate treatment, and retaliation, *id.* at 54–60 (Claim 5); (6) violation of RCW 49.12.250 for "refusal to permit review of personnel file," *id.* at 60–61 (Claim 6); (7) WLAD violation for "aiding and abetting," *id.* at 61 (Claim 7); (8) a 42 U.S.C. § 1983 claim under the First Amendment, *id.* at 61–63 (Claim 8); (9) two § 1983 claims under the Fourteenth Amendment, *id.* at 63–65 (Claims 9 and 10); (10) a § 1983 claim under the Fourth Amendment, *id.* at 65–67 (Claim 11); (11) defamation and invasion of privacy claims under Washington law, *id.* at 67 (Claim 12); (12) "outrage / intentional infliction / negligent infliction of emotional distress," *id.* at 67–68 (Claim 13); and (13) "blacklisting" in violation of RCW 49.44.010, *id.* at 68–69 (Claim 14).

### III
#### DISCUSSION

Because Plaintiff proceeds pro se, the Court liberally construes his pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). That said, "courts should not have to serve as advocates for pro se litigants." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). District courts should "not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)). Pro se pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 199 (9th Cir. 1995). "[I]t is axiomatic that pro se litigants, whatever their ability

level, are subject to the same procedural requirements as other litigants." *Munoz v. United States*, 28 F.4th 973, 978 (9th Cir. 2022).

A.   MVO's Motion

MVO moves to dismiss all claims against it. Dkt. # 11. The LCCA Defendants join in the motion. Dkt. ## 50, 85.

1.   Rule 12(b)(6) standard

Rule 8(a) requires plaintiffs to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation omitted). A complaint that falls short of Rule 8(a)'s requirements may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is proper when a complaint fails to state a plausible claim for relief. *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts need not accept as true "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* A court must accept all facts alleged in the complaint as true, *Barker v. Riverside Cnty. Off. of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009), but it need not accept as true a "legal conclusion couched as a factual allegation," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). To survive a Rule 12(b)(6) motion, a complaint must contain well-pleaded factual allegations, such that a plaintiff may "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Thus, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). A court construes the complaint in the light most favorable to the nonmovant, *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416

F.3d 940, 946 (9th Cir. 2005), and it "must consider the complaint in its entirety . . . when ruling on Rule 12(b)(6) motions," *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007).

### 2. Claims 8–11: section 1983 claims

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008) ("In a § 1983 action, the plaintiff must also demonstrate that the defendant's conduct was the actionable cause of the claimed injury."). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A plaintiff must allege facts showing how the individually named defendants caused or personally participated in causing the alleged harm. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). Vague, conclusory allegations of participation in civil rights violations do not state a claim for relief. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

Plaintiff fails to allege the requisite causal connection between an alleged violation of his constitutional rights and the conduct of MVO or the LCCA Defendants. Each section 1983 claim contains vague, conclusory allegations of wrongdoing asserted against all Defendants collectively and identifies no individual acts or omissions by any Defendants to support a plausible section 1983 claim. *See, e.g.*, Dkt. # 1-2 at 61–62 (Claim 8, a First Amendment § 1983 claim) ("Defendants had constructive knowledge that [Plaintiff] was engaged in [First]

Amendment speech when he [was] speaking on issues of health, safety, and welfare, which is of public concern."); *id.* at 64 (Claim 9, a Fourteenth Amendment § 1983 claim) ("Defendants . . . deprived Plaintiff of his liberty interest . . . to not be deprived of his unblemished workplace record . . . Defendants . . . deprived Plaintiff of his property interest in his job (and/or to hold on to employment) without affording him notice or an opportunity to be heard . . . ."); *id.* at 65 (Claim 10, a Fourteenth Amendment § 1983 claim) ("Defendants failed to treat [P]laintiff like [a] similarly situated PERSON/COWORKE[R] or other employees who did not engage in protected activities."); *id.* at 66 (Claim 11, a Fourth Amendment § 1983 claim) ("Defendants made malicious, false, and unlawful disclosures about [P]laintiff's job performance to, and in the presence of the public and [P]laintiff's coworkers.").

In short, Claims 8 through 11 are insufficiently pleaded.

3.  Claims 1–7, 12–14: state-law claims

The legal theory underpinning Claim 1 lacks clarity. The complaint describes it as "Wrongful Termination in Violation of Public Policy (Constructive Discharge) (Discrimination & Retaliation) & (Breach of LCCA's Policies)." Dkt. # 1-2 at 50. The cause of action appears to be for constructive wrongful discharge in violation of public policy.

For a wrongful termination in violation of public policy claim, a plaintiff must allege that: (1) "the employee's discharge may have been motivated by reasons that contravene a clear mandate of public policy"; and (2) "the public-policy-linked conduct was a significant factor in the decision to discharge the worker." *Peiffer v. Pro-Cut Concrete Cutting & Breaking Inc.*, 6 Wash. App. 2d 803, 829, 431 P.3d 1018 (2018). "A cause of action for wrongful discharge in violation of public policy may be based on 'either express or constructive' discharge." *Wahl v. Dash Point Fam. Dental Clinic, Inc.*, 144 Wash. App. 34, 43, 181 P.3d 864 (2008) (quoting *Snyder v. Med. Serv. Corp. of E. Wash.*, 145 Wash.2d 233, 238, 35 P.3d 1158 (2001)). For a

constructive wrongful discharge in violation of public policy claim, called a "hybrid claim" of constructive discharge and wrongful termination in violation of public policy, "the elements of a constructive discharge claim supplant the second element of the wrongful termination in violation of public policy claim." *Peiffer*, 6 Wash. App. 2d at 830.  The first element of a wrongful termination in violation of public policy claim still applies, "although it is modified to address whether the intolerable condition that led the employee to resign contravened a clear mandate of public policy." *Id.*  Therefore, the elements of a constructive wrongful discharge in violation of public policy claim are: (1) the intolerable working conditions that led the employee to resign contravened a clear mandate of public policy; (2) the employer deliberately made working conditions intolerable; (3) a reasonable person in the employee's position would be forced to resign; (4) the employee resigned because of the intolerable condition, and no other reason; and (5) the employee suffered damages as a result of being forced to resign.  *Id.*  The plaintiff bears the burden of proving the existence of a clear public policy.  *Gardner v. Loomis Armored Inc.*, 128 Wash. 2d 931, 941, 913 P.2d 377 (1996).  "'The question of what constitutes a clear mandate of public policy is one of law' and can be established by prior judicial decisions or constitutional, statutory, or regulatory provisions or schemes."  *Martin v. Gonzaga Univ.*, 191 Wash. 2d 712, 725, 425 P.3d 837 (2018) (quoting *Dicomes v. State*, 113 Wash. 2d 612, 617, 782 P.2d 1002 (1989)).

      Claim 1 fails to state a claim against MVO or the LCCA Defendants because Plaintiff pleads no facts to support the first element of constructive wrongful discharge in violation of public policy.  *See* Dkt. # 1-2 at 50–52.  Plaintiff does not allege that the allegedly intolerable working conditions that led him to resign contravened a clear public policy mandate.  *See Peiffer*, 6 Wash. App. 2d at 829.

The complaint describes Claim 2 as "Retaliation in Violation of Public Policy – Constructive Discharge." *Id.* at 52. In Washington, there is no cause of action for wrongful retaliation in violation of public policy. *See Korslund v. DynCorp Tri-Cities Servs., Inc.*, 156 Wash. 2d 168, 176, 125 P.3d 119 (2005), *overruled on other grounds by Rose v. Anderson Hay & Grain Co.*, 184 Wash. 2d 268, 358 P.3d 1139 (2015) (affirming intermediate appellate court's ruling that declined to recognize a cause of action for wrongful retaliation in violation of public policy).

If construed as a constructive wrongful discharge in violation of public policy claim, the elements are the same as set forth above. *See supra*. Claim 2 fails to state such a claim for the same reason as Claim 1: Plaintiff does not allege that the intolerable working conditions that led him to resign contravened a clear public policy mandate, as required for a constructive wrongful discharge in violation of public policy claim. *See* Dkt. # 1-2 at 52–53. The complaint alleges that Plaintiff "was subjected to a pre-textual Corrective Action Plan" because (1) he had reported "LCCA's conduct," and (2) "he refused to participate in violating LCCA's policies, state or federal laws." *Id.* at 51. Plaintiff includes no specific facts in support of these allegations. *See id.* Plaintiff further alleges that "[r]eprimanding employees in retaliation for resisting the violations of laws that secure important public policies contravenes those policies." *Id.* at 52. Besides these vague assertions, Plaintiff does not further explain the public policy at issue. Plaintiff does not meet his burden in pleading a clear mandate of public policy that was contravened. *See Dicomes*, 113 Wash. 2d at 617 ("[C]ourts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.").

Claim 3 is insufficiently pleaded because it contains only a legal conclusion, unsupported by any factual allegations. Dkt. # 1-2 at 53 (alleging that Defendants "discriminated against

ORDER RE: DKT. ## 11, 16, 87 - 9

individuals who have opposed unfair or discriminatory employment practices, in violation of [RCW] 49.60.210(1)"). *See Iqbal*, 556 U.S. at 678 (explaining that courts need not accept as true a "legal conclusion couched as a factual allegation") (quoting *Twombly*, 550 U.S. at 555).

Claim 4 fails to state a claim because Plaintiff fails to plead all six elements of an interference claim under the WFLA.[5]  For this claim, an employee must allege that "(1) they were eligible for the WFLA's protections; (2) the WFLA covered their employer; (3) the WFLA entitled them to leave; (4) they notified their employer of their intent to take leave; (5) their employer denied them WFLA benefits; and (6) they were prejudiced by the denial of benefits." *Shaffstall v. Old Dominion Freight Line, Inc.*, 612 F. Supp. 3d 1186, 1204 (W.D. Wash. 2020). Plaintiff only addresses the fourth element. *See* Dkt. # 1-2 at 54 (alleging Plaintiff can offer "evidence . . . that he provided Defendant LCCA with sufficient notice of his (spouse's) need for care, and therefore, is able to demonstrate the notice requirements of . . . [WFLA]").  Because Plaintiff alleges no facts in support of the other five elements, *see id.*, this claim is insufficiently pleaded.  *See Moseley v. Dep't of Soc. & Health Servs.*, No. 3-17-CV-05427-BHS-JRC, 2020 WL 2497756, at *8 (W.D. Wash. Apr. 7, 2020), *report and recommendation adopted*, No. C17-05427-BHS-JRC, 2020 WL 2494702 (W.D. Wash. May 14, 2020) (recommending dismissal without prejudice and with leave to amend for the plaintiff's First Amendment retaliation claim for failure to plead all elements for such a claim).

---

[5] MVO says that Claim 4 is insufficiently pleaded because the statute Plaintiff cites, chapter 49.78 RCW, was repealed and replaced by Title 50A RCW. Dkt. # 11 at 10.  *See* RCW 50A.05.125 ("The passage of the paid family and medical leave act repealed chapter 49.78 RCW and replaced its provisions as a new title in Title 50A RCW."). But Washington's legislature, in repealing and replacing chapter 49.78 RCW, did not intend to "affect any proceeding that . . . could be[] brought under the existing chapter 49.78 RCW relating to conduct, acts, or omissions occurring on or before December 31, 2019." *Id*.  The events at issue in Claim 4 occurred in 2018. "Accordingly, a cause of action for conduct, acts, or omissions occurring on or before December 31, 2019, under chapter 49.78 RCW remains available within its applicable statute of limitations." RCW 50A.05.125(1).  Although the Court makes no determination as to the statute of limitations period, it appears Claim 4 may properly be brought under chapter 49.78 RCW.

ORDER RE: DKT. ## 11, 16, 87 - 10

Claim 5, which alleges WLAD claims for hostile work environment, disparate treatment, and retaliation, fails to allege sufficient facts to state plausible claims for relief.

For a hostile work environment claim under WLAD, an employee must show "that the harassment (1) was unwelcome, (2) was because of a protected characteristic, (3) affected the terms or conditions of employment, and (4) is imputable to the employer." *Blackburn v. State*, 186 Wash. 2d 250, 260, 375 P.3d 1076, 1081 (2016). Plaintiff alleges that Defendants Falcon, Butner, Travers, and Scott "participated in creating a hostile work environment by their initiation of the [Corrective Action Plan]." Dkt. # 1-2 at 57. But Plaintiff fails to allege facts showing that any purported harassment was because of a protected characteristic. Plaintiff merely asserts that he was subjected to "hostile work environment color, national origin, race, gender, sex harassment." *Id.* at 50. The Court does not accept as true Plaintiff's legal conclusion that Defendants' alleged harassment was due to his race, gender, and national origin; Plaintiff must plead specific facts in support of this assertion. *See, e.g.*, *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief' requires more than labels and conclusions . . . .") (citation omitted); *id.* at 570 (plaintiffs must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible"); *Iqbal*, 556 U.S. at 678 (plaintiffs must plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Because of the lack of any facts to support his allegation that Defendants' harassment was because of a protected characteristic, Plaintiff fails to state a plausible hostile work environment claim under WLAD.

For a disparate treatment claim under WLAD, a plaintiff must show that they: (1) are in a protected class; (2) suffered an adverse employment action; (3) were doing satisfactory work; and (4) were treated differently than someone not in the protected class. *Kirby v. City of Tacoma*, 124 Wash. App. 454, 468, 98 P.3d 827 (2004). "An actionable adverse employment

action must involve a change in employment conditions that is more than an inconvenience or alteration of job responsibilities." *Id.* (internal citation omitted). For this claim, Plaintiff alleges he "experienced disparate treatment because of color, national origin, race, age, and sex/gender." Dkt. # 1-2 at 57. But Plaintiff alleges no cognizable adverse employment action in support of this claim. He alleges only that he "was subject to disparate treatment when he . . . was ordered to keep his office door open." *Id.* at 58. In liberally construing the complaint, even if the adverse employment action was the alleged constructive discharge, Plaintiff does not allege the remaining two elements of satisfactory work or differential treatment.

And finally for a prima facie retaliation claim under WLAD, a plaintiff must show that (1) they engaged in statutorily protected activity, (2) they suffered an adverse employment action, and (3) there was a causal link between their activity and the other person's adverse action. *Currier v. Northland Servs., Inc.*, 182 Wash. App. 733, 742, 332 P.3d 1006 (2014). "A plaintiff proves causation by showing that retaliation was a substantial factor motivating the adverse employment action." *Id.* at 743. As for the causal link element, Plaintiff pleads no facts showing that retaliation motivated any alleged adverse employment action taken by Defendants. *See* Dkt. # 1-2 at 59 (alleging that Plaintiff "was often threatened with disciplinary actions, including a charge of insubordination for not following" directions and that he was directed to tell employees to not speak in Spanish at work, a directive that he apparently disagreed with).

Claim 6 alleges a violation of RCW 49.12.250 for Defendants Falcon, Butner, and Scott's alleged failure to provide Plaintiff a copy of his personnel file. Dkt. # 1-2 at 60. Plaintiff cites no authority providing a private right of action under this RCW provision. For this claim, the Washington Supreme Court's decision in *Martin v. Gonzaga University* is instructive. 191 Wash. 2d 712, 730, 425 P.3d 837 (2018). There, the plaintiff brought a similar personnel file claim against Gonzaga under RCW 49.12.250. *Id.* Though the trial court granted summary

judgment in Gonzaga's favor on this claim, the Washington Court of Appeals reversed. *Id.* But "Judge Korsmo dissented on this issue, concluding that the claim is not justiciable because the relevant statutes 'did not create a judicial cause of action' and the Department of Labor and Industries (DLI) is the 'first line defender' of rights contained in the statute." *Id.* (quoting *Martin v. Gonzaga Univ.*, 200 Wash. App. 332, 378–78, 402 P.3d 294 (2017), *aff'd in part*, *rev'd in part*, 191 Wash. 2d 712 (2018)). The Washington Supreme Court sided with Judge Korsmo:

> The statutes at issue, RCW 49.12.240 and RCW 49.12.250, are a part of the industrial welfare chapter of the Revised Code of Washington. DLI has enforcement authority over this chapter. RCW 49.12.033; RCW 43.22.270(5). As Judge Korsmo concluded, Martin would first have to pursue an administrative request through DLI before seeking a judicial remedy from the court. There is nothing in the record to show that Martin has brought his request to DLI. Thus, we reverse the Court of Appeals' holding on the personnel file claim and hold that Gonzaga University is entitled to summary judgment on this claim.

*Id.* at 731 (internal citation omitted). As in *Martin*, Plaintiff has pleaded no facts suggesting that he first pursued an administrative request through the Washington Department of Labor and Industries before filing his complaint. For this reason, Plaintiff fails to state a claim for relief for Claim 6.

The remaining four causes of action—Claims 7, 12, 13, and 14—are insufficiently pleaded because they allege no facts in support of each cause of action.[6] Instead, Plaintiff merely offers "threadbare recitals of the elements of [each] cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. *See, e.g.*, *id.* at 61 (alleging that "Defendants have aided, abetted, encouraged, or incited the commission of an unfair employment practice," with no factual allegations, for Claim 7); *id.* at 67 (alleging that "Defendants made malicious,

---

[6] The Court has scanned the complaint in its entirety for factual allegations that support these four causes of action. *See generally* Dkt. # 1-2. The Court has found no facts in support of Claims 7, 12, 13, and 14 elsewhere in the complaint. Should Plaintiff wish to amend these claims in a Second Amended Complaint, *see infra* § III.C, the Court advises Plaintiff to include the factual allegations supporting each claim in the section corresponding to the claim.

ORDER RE: DKT. ## 11, 16, 87 - 13

false and unlawful disclosures about [P]laintiff's job performance to, and in the presence of, [P]laintiff's coworkers and patients," without further detail, for Claim 12); *id.* at 68 (alleging that "Defendants['] wrongful acts negligently inflicted emotional distress upon Plaintiff," without further factual allegations, for Claim 13); *id.* at 68–69 (no factual allegations for Claim 14).

In sum, the allegations in all causes of action fail to state plausible claims for relief against MVO or the LCCA Defendants.

B.      Sunrise Defendants' Motion

The Sunrise Defendants also move to dismiss all claims against them. Dkt. # 87.

As noted above, Claims 1 through 5 are employment-related causes of action alleging constructive discharge, hostile work environment, disparate treatment, and retaliation, among other causes of action. These claims contain factual allegations against Defendants MVO, LCCA, Falcon, Butner, Travers, and Scott. *See generally* Dkt. # 1-2 at 50–60. But these causes of action contain no factual allegations against any of the Sunrise Defendants. *See id.* Because Plaintiff alleges no facts that purport to establish liability against the Sunrise Defendants, these six claims fail to state plausible claims for relief.

Claims 8 through 11 allege civil rights violations under section 1983. *Id.* at 61–66. These causes of action fail to explain how the Sunrise Defendants' actions support any of these civil rights claims. The Sunrise Defendants are not named in the section 1983 claims, besides vague, conclusory allegations directed at the dozens of Defendants in this case. *See, e.g.*, *id.* at 65 (Claim 10, a Fourteenth Amendment § 1983 claim) ("Defendants failed to treat [P]laintiff like [a] similarly situated PERSON/COWORKE[R] or other employees who did not engage in protected activities."); *id.* at 66 (Claim 11, a Fourth Amendment § 1983 claim) ("Defendants made malicious, false, and unlawful disclosures about [P]laintiff's job performance to, and in the presence of the public and [P]laintiff's coworkers."). As to the Sunrise Defendants, these causes

ORDER RE: DKT. ## 11, 16, 87 - 14

of action fail to state a claim because they do not meet the "minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil*, 66 F.3d at 199.

The remaining five causes of action—Claims 6, 7, 12, 13, and 14—suffer the same fate. For these claims, the complaint provides no factual allegations explaining how the Sunrise Defendants contributed to Plaintiff's alleged injuries. For example, Claim 7 alleges that "Defendants have aided, abetted, encouraged, or incited the commission of an unfair employment practice or attempted to obstruct any other person from complying with nondiscrimination requirements," with no further explanation. *Id.* at 61. It is unclear how this claim implicates the Sunrise Defendants. Claims 12 through 14 merely recite elements of the cause of action and contain no factual allegations against the Sunrise Defendants (or any other Defendants). *See e.g.*, *id.* at 68 (Claim 13 alleges that "Defendants['] wrongful acts negligently inflicted emotional distress upon Plaintiff," with no factual allegations).

All claims alleged against the Sunrise Defendants fail to state plausible claims for relief and are subject to dismissal under Rule 12(b)(6).[7]

C.   Leave to Amend

"The law is clear that before a district court may dismiss a pro se complaint for failure to state a claim, the court must provide the pro se litigant with notice of the deficiencies of [their] complaint and an opportunity to amend the complaint prior to dismissal." *McGuckin v. Smith*, 974 F.2d 1050, 1055 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). A court may decline to grant leave to amend if it determines that such amendment would be futile; that is, if it "determines that the allegation of other facts

---

[7] As above with MVO's motion, the Court has scanned the entire complaint for factual allegations that might support Plaintiff's claims asserted against the Sunrise Defendants. The complaint contains no factual allegations against these four Defendants. *See generally* Dkt. # 1-2. These Defendants are mentioned only in the complaint's section that describes the parties. *See id.* at 22–36.

ORDER RE: DKT. ## 11, 16, 87 - 15

consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

Because the complaint is vague and relies on conclusory language, the Court cannot say that amendment would be futile. Recognizing that pro se litigants are "far more prone to making errors in pleading than the person who benefits from the representation of counsel," *Noll*, 809 F.2d at 1448, the Court will grant Plaintiff one opportunity to remedy the above deficiencies. The Court therefore dismisses without prejudice Plaintiff's complaint and grants Plaintiff leave to file an amended complaint, which must be titled "Second Amended Complaint."

If Plaintiff chooses to amend his claims in a Second Amended Complaint (SAC), the pleading must include: (1) a short and plain statement of the grounds for the Court's jurisdiction; (2) a short and plain statement of the specific legal claims being raised; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). It must set forth the factual basis on which Plaintiff believes he is entitled to relief, using numbered paragraphs with each paragraph setting forth a single fact. The factual allegations, which must be in short and plain terms, must permit the named Defendants to understand what actions Plaintiff believes Defendants took that entitle Plaintiff to relief. Plaintiff must identify which claims pertain to which Defendants. For each claim, Plaintiff should try to include dates for the events that give rise to the claim. The Court urges Plaintiff to consult the Court's online resources available for pro se litigants.[8]

The Court instructs Plaintiff to avoid engaging in "shotgun pleading" for the SAC. The term "shotgun pleading" refers to pleading practices that violate either Rule 8(a)(2)'s

---

[8] Plaintiff may access those resources here: https://www.wawd.uscourts.gov/representing-yourself-pro-se; https://www.wawd.uscourts.gov/court-forms#Pro%20Se.

ORDER RE: DKT. ## 11, 16, 87 - 16

requirement that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," or Rule 10(b)'s requirement that "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" if "doing so would promote clarity." *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) ("Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"). The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings." *Id.* at 1321. Two are at issue: (1) a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; and (2) a complaint "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1321–23.

The complaint engages in both types of shotgun pleading. Claims 1 through 12 begin with the phrase: "Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint." Dkt. # 1-2 at 50–67. And Claims 1, 3, 5, and 7 through 13 are asserted against the entire group of Defendants. *Id.* This type of pleading complicates the Court's efforts to understand which factual allegations support which claims and against which Defendants. The Ninth Circuit has affirmed the dismissal of at least one "shotgun pleading" under Rule 8(a). *See Destfino v. Reiswig*, 630 F.3d 952, 958–59 (9th Cir. 2011). And district courts routinely dismiss vague complaints in which courts must guess which facts support which claim. *See, e.g.*, *Martin v. Washington State Dep't of Corr.*, No. C20-0311-JCC-MAT, 2021 WL 511205, at *2 (W.D. Wash. Feb. 11, 2021) (dismissing section 1983 action that collectively referred to the defendants and did not specify which parties committed or were responsible for which actions or decisions); *Anderson v. JPMorgan Chase & Co.*, No. C18-73-

RSM, 2018 WL 3608405, at *2 (W.D. Wash. July 26, 2018) (dismissing complaint that "violates Rule 8 pleading standards by failing to distinguish between Defendants"); *Nissen v. Lindquist*, No. C16-5093-BHS, 2017 WL 26843, at *2 (W.D. Wash. Jan. 3, 2017) (dismissing complaint that fails to "give Defendants, and the Court, adequate notice of the allegations supporting each federal cause of action").

If Plaintiff chooses to amend his claims, he must file a SAC by no later than August 22, 2023. The failure to file a SAC that conforms to Rule 8 may lead to dismissal of claims. *See McConnachie v. Washington State Dep't of Soc. & Health Servs.*, No. 2:21-CV-00181-SMJ, 2022 WL 2073040, at *1 (E.D. Wash. May 2, 2022) (dismissing the plaintiff's second amended complaint with prejudice for failure to cure the deficiencies the district court identified in the first amended complaint).

D.  State Defendants' Motion

The State Defendants move for a more definite statement under Rule 12(e). Dkt. # 16.

1.   Rule 12(e) standard

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The party seeking a more definite statement must specify "the defects complained of and the details desired." *Id.* In adjudicating Rule 12(e) motions, courts evaluate the complaint based on Rule 8, which requires a complaint to contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a).

ORDER RE: DKT. ## 11, 16, 87 - 18

2.     Analysis

The State Defendants contend that the complaint is so vague and ambiguous that they cannot file a responsive pleading because they cannot analyze the allegations against them. Dkt. # 16 at 6. They add that the complaint does not provide necessary dates or facts in a manner to allow them to assert affirmative defenses such as qualified immunity. *Id.* The Court agrees. The complaint does not mention any of the State Defendants in its facts section or within the individual causes of action. *See* Dkt. # 1-2 at 46–69. For this reason, the State Defendants cannot reasonably fashion an answer or assert applicable affirmative defenses. When a plaintiff does not plead the facts necessary to determine a qualified immunity defense, the district court can order a more definite statement under Rule 12(e) to permit this threshold question to be resolved at the outset of the litigation. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). Although Rule 12(e) motions are viewed with disfavor, *see C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1191 (E.D. Cal. 2010), such a motion is "appropriate where Plaintiffs have failed to give notice to the defending party of the substance of the claim against them," *Hayton Farms Inc. v. Pro-Fac Corp. Inc.*, No. C10-520-RSM, 2010 WL 5174349, at *4 (W.D. Wash. Dec. 14, 2010).

Because the complaint does not adequately notify the State Defendants as to the nature of the claims asserted against them, the State Defendants' motion is granted. If Plaintiff chooses not to amend his claims against MVO, the LCCA Defendants, or the Sunrise Defendants, he must still provide a more definite statement of his claims against the State Defendants, in a Second Amended Complaint, by no later than August 22, 2023. *See* Fed. R. Civ. P. 12(e) ("If the court orders a more definite statement and the order is not obeyed . . . within the time the court sets, the court may strike the pleading or issue any other appropriate order.").

ORDER RE: DKT. ## 11, 16, 87 - 19

# IV

## CONCLUSION

For the above reasons, the Court hereby ORDERS as follows:

1. MVO's motion to dismiss (Dkt. # 11), to which the LCCA Defendants join (Dkt. ## 50, 85), is GRANTED. Plaintiff's claims against MVO and the LCCA Defendants are DISMISSED without prejudice and with leave to amend.

2. The Sunrise Defendants' motion to dismiss (Dkt. # 87) is GRANTED. Plaintiff's claims against the Sunrise Defendants are DISMISSED without prejudice and with leave to amend.

3. Plaintiff is GRANTED leave to file a Second Amended Complaint by no later than August 22, 2023. Plaintiff may amend the causes of action he asserted against MVO, the LCCA Defendants, and the Sunrise Defendants in his original complaint. *See* Dkt. 1-2. Plaintiff may not add new claims or new Defendants.

4. The State Defendants' motion for a more definite statement (Dkt. # 16) is GRANTED. Plaintiff must provide a more definite statement of his claims against the State Defendants by no later than August 22, 2023. This must be included in the Second Amended Complaint.

Dated this 1st day of August, 2023.

John H. Chun
United States District Judge

ORDER RE: DKT. ## 11, 16, 87 - 20